[Civ. No. 4806.   Fourth Dist.   Oct. 16, 1953.]

VALLI D. RAICHART, as Executrix, etc., Respondent, v. N. GORDON PHILLIPS, Appellant.

Eugene M. Elson for Appellant.

Glenn A. Lane for Respondent.

BARNARD, P. J.—This is an action for breach of contract, with a second count for conversion, involving the right to 320 shares of corporate stock.

The defendant Phillips promoted three oil companies, being president of each, the Phillips-Ramsay Oil Company in 1946, the Nelson Phillips Oil Company in 1947, and the Gordon Oil Company in 1949. He became acquainted with the decedent, Dr. Raichart, in 1946, they saw each other frequently, and Dr. Raichart bought stock in all three companies. Phillips organized the Gordon Oil Company in January, 1949. A permit was issued in March, 1949, authorizing the issuance of 13,000 shares of stock to Phillips and the sale of an additional 13,000 shares at a par value of $10, and providing that all shares should be held in escrow and that Phillips should receive no dividends on his shares until the purchasers of shares for cash had been reimbursed for the full purchase price.

In August, 1949, Phillips and Dr. Raichart executed an agreement reading as follows:.

"San Diego, Calif.
"August 18th 1949

"For promotional services rendered by G. W. Raichart I, N. Gordon Phillips hereby agrees to give when received from escrow, or order of the Corporation Commissioner, and G. W. Raichart hereby agrees to accept as payment in full for his promotional services, a total of 320 shares of Capitol stock of the Gordon Oil Company when issued to N. Gordon Phillips as authorized under the terms of its permit, with the corporation Department of the State of California and pursuant to all covenants, conditions and terms of said permit, governing all stock when issued to N. Gordon Phillips.

"The undersigned hereby certifies that he further agrees to accept and be bound by all the provisions of the order of the Commissioner of Corporations of the State of California, contained in said permit when the stock is issued to

"Signed N. GORDON PHILLIPS

"Accepted  G. W. RAICHART"

Dr. Raichart died suddenly on December 27, 1950. Shortly thereafter, Phillips put through a transaction by which one Kline purchased all of the stock of the Gordon Oil Company. The deal was closed in March, 1951, and Phillips received about $2,000,000 for his shares of stock

The widow of Dr. Raichart, as executrix of his will, brought this action to recover the value of the 320 shares. The defendant's answer admitted the execution of the agreement and that none of the shares had been delivered to or for the decedent. As defenses, it was alleged that this instrument was never intended to be an agreement and is void; that it was executed without consideration; and that the written agreement had been cancelled and extinguished by an oral agreement between the parties. The court, sitting without a jury, found in all material respects in favor of the plaintiff finding, among other things, that on the date of his death the decedent was entitled to 320 shares of Gordon Oil Company stock when released by the Corporation Commissioner; that on January 24, 1951, Phillips sold said shares and converted them to his own use and received the proceeds in the amount of $49,920; and that the reasonable value of said shares on that date was $49,920. Judgment was entered for that amount with interest from that date. A motion for a new trial was denied, and this appeal followed.

Appellant's main contentions are that this agreement, which was admittedly typed by him in Dr. Raichart's office and signed by both parties, was never intended to be an agreement and is void; that it was not supported by any consideration; and that it was cancelled by an oral agreement made about a week later. Conceding that it would be futile to argue these three points if the evidence relating thereto was conflicting, or such that conflicting inferences could lawfully be drawn, the appellant argues that there was no conflict in the evidence, that no reasonable inferences could be drawn which would support the findings, and that such findings are based entirely on surmise and conjecture.

The only persons present when the agreement was executed were Dr. Raichart and the appellant. In his testimony the appellant admitted his close association with Dr. Raichart since 1946; his sale of stock in the various companies to Dr. Raichart, his employees and office associates and members of his family; that he himself was hard pressed for money at times; and that Dr. Raichart had loaned him money at various times during this period although he said he had repaid all these loans except one of $2,500, which he still owed. While he testified that this loan was made in cash and not by a check, there is evidence indicating that other such loans were made by checks, which were produced at the trial.

With respect to the making of the agreement in question Phillips testified that in April, 1949, Dr. Raichart told him he would like to get some stock in the Gordon Oil Company; that he told the doctor that all of that stock had been sold and none was available; that early in August, Dr. Raichart again asked about obtaining stock and the witness told him that several wells were producing and paying dividends, and that the only stock obtainable would be that of some stockholder who might be willing to sell; that the doctor asked him to see if he could buy some and he replied that he would; that on August 18th he was in Raichart's office and Raichart asked him if he had found anyone willing to sell his shares; that he told Raichart he had heard of some sales at around $100 a share and he would get some if he could; that Raichart replied that he did not have that amount of money and would have to borrow some, and that he would like to have a paper to show possible lenders that he was entitled to a certain number of shares; that the witness then wrote this agreement, leaving the number of shares blank; that the next day Raichart decided that he wanted 320 shares

and Phillips filled in that number in the blank space, and both of them signed the agreement.

Phillips further testified that a week or 10 days later in Raichart's office Raichart told him he would be unable to go through with the deal; that he mentioned the fact that he owed Raichart $2,500 and offered to repay it, but Raichart refused to accept it at that time; that he then suggested that Raichart return the agreement to him, and Raichart told one of his assistants to bring it from his safe; that she returned in a few moments and said she could not find it; that he remarked that it would show up some day and Raichart could give it to him; that a few days later he returned and asked if the agreement had been found and Raichart replied that it had not; that Raichart called in his nurse and told her to look for the agreement; that she was unable to find it; that Raichart said it would probably show up some day and he would get it for Phillips; and that he later saw Dr. Raichart on innumerable occasions prior to his death.

When asked why he had not used more appropriate language, if the purpose of the agreement was to enable Raichart to borrow money on it, Phillips replied that the reason he worded the agreement as he did was that neither he nor the doctor knew "what we were going to have to pay for the stock"; and that "so I just used that as a substitute there that would fill the bill." When asked with reference to the language "for promotional services rendered," he replied that Raichart had at no time performed services of any kind for him prior to or after the execution of the agreement. When asked why he had provided that the stock he agreed to give Raichart in full payment for services was to be delivered after it was issued to Phillips rather than to Raichart, he replied that he wanted to keep the amount of outstanding cash shares as low as possible, since he could receive no dividends until all cash purchasers had received their investment in full.

The appellant's testimony with respect to the purpose of the agreement in question is far from satisfactory, especially in view of the fact that the lips of the other party to the agreement are sealed by death. The appellant was a man of wide business experience and it seems unbelievable that he would execute such an agreement, agreeing to personally convey a definite number of shares, for the express purpose of misleading others into lending money to Raichart to enable

him to buy shares owned by other stockholders, or to do this at a time when it was not known whether or not that number of shares, or any number, would be available. It is also strange that Raichart would say he did not have "that amount of money," before any number of shares was decided on or even discussed. The fact that neither party knew what price would have to be paid for such other stock, if any might be found, fails to explain the language used in the agreement. The reason given for providing that the shares be first issued to Phillips is not very plausible. If Raichart should succeed in buying cash shares from other stockholders, they would still remain cash shares. The language of the agreement clearly indicates that it referred to stock in escrow which was owned and controlled by Phillips, and the various explanations offered by Phillips tend to strengthen that conclusion rather than weaken it.

The appellant testified at great length and he not only contradicted himself but was impeached in a number of respects. His testimony as a whole would tax anyone's credulity, and amply discloses why it was not believed by the court. At the time this instrument was executed the parties did not know whether that amount of stock, or any amount other than that controlled by the appellant, was available, and there is strong evidence that at that time Raichart had liquid assets which were sufficient to have enabled him to buy that amount of stock without the necessity of using such a pretext for the purpose of borrowing money. It further appears, without conflict, that the appellant then owed Raichart $2,500 for borrowed money; that this written agreement was found in Raichart's safe after his death and removed by his sister; and that shortly thereafter the appellant offered the sister $7,500 to return the paper to him. In explaining this offer the appellant testified "I said to myself, here is a paper that on its face would indicate that I owed something . . . and here it crops up in Leona's possession." He further testified that he was willing to give two or three times the amount of the loan to the sister because she and her mother needed the money. This instrument itself was evidence, its execution was admitted, and the evidence relied on by the appellant merely created a conflict. The evidence as a whole, including appellant's testimony, justifies and sustains the court's findings and conclusion with respect to the purpose and intent with which this agreement was executed. Reasonable inferences may be drawn from the evidence in support

of the findings, and it cannot be said that any such inferences amount to nothing more than surmise and conjecture.

█ The appellant contends that this agreement was not supported by any consideration, arguing that since all the stock of the corporation was sold prior to the execution of the contract there could be no promotional services for Raichart to perform thereafter; that a past consideration would not be sufficient in the absence of a preexisting legal obligation; and that there is no evidence that the loans previously made to Phillips by Raichart had anything to do with the making of the agreement in question.

The agreement in question recites a consideration indicating services and assistance in attempting to make this corporation a success. Assuming that all of the stock was sold, many things remained to be done, and there is some indication of a preexisting obligation. There is evidence justifying the inference that Raichart was of assistance to Phillips both before and after the date of the agreement; that he cooperated with Phillips to a rather large extent over this entire period; and that he was instrumental in the sale of stock to his business associates and family. Phillips was admittedly hard up for money at times during this period and Raichart had admittedly loaned him large amounts at various times, which must have been of great assistance to him. While Phillips said that he had repaid all of these loans except one for $2,500, there was no proof of that fact other than his word. He testified that he kept no records, that he paid the loans in cash and not by check, and that he neither asked for nor received receipts. There is evidence that Raichart furnished to Phillips or his companies a total of $18,200 over this period. While this was shown by checks issued by Raichart, the records found by his estate failed to disclose what more than half of these payments were for. The evidence does show that of this amount $6,900 was paid to Phillips personally prior to August 18, 1949, and $4,000 was paid to him personally in January and February of 1950, after the contract was executed and long before the project had developed to a point making Phillips' sale of the entire corporation possible. It also appears that during this period Phillips had sold stock in these various companies to six or seven people in Raichart's office, and also to the doctor and five of his relatives. It is unnecessary to review the argument made with respect to certain technical dis-

tinctions in connection with the matter of consideration, which have been held applicable under some circumstances. The evidence is sufficient to support the court's finding that a sufficient consideration here existed.

The appellant further contends that the evidence shows, without conflict, that these parties, about a week later, entered into an oral agreement cancelling the written agreement. The appellant so testified, and a nurse formerly employed in Dr. Raichart's office testified that on one occasion, when Phillips was present, the doctor asked her to try and find the agreement and she was unable to do so. The agreement was in writing, and admittedly was executed and delivered. Appellant's evidence created a conflict, and the burden was upon him to establish the oral contract of rescission to the satisfaction of the court. The trial judge did not believe appellant's evidence in this regard, and the circumstances support him in that conclusion. Having been made for another purpose, as found by the court, this agreement would naturally not be cancelled for the reason relied on by the appellant. Raichart had kept the contract in his safe, and it was found there after his sudden death, nearly a year and a half later. It is hardly reasonable to believe that Phillips would have left so important a matter in that condition, without securing an adequate release of the agreement, if the parties had actually agreed on its cancellation. The evidence, with the reasonable inferences, supports the findings in this connection. This is especially true in view of the unsatisfactory nature of Phillips' testimony, of his willingness to pay $7,500 to get the contract back, and of the fact that the only other party to the agreement is dead.

Finally, the appellant contends that the court erred in admitting evidence of other transactions in which Phillips and other parties were involved at about the same time. It is argued that these were admitted to show a course of conduct by Phillips to violate his agreements; that these transactions did not involve finally adjudicated matters; that some of them were matters which were compromised and disposed of by settlement; and that none of such evidence was relevant to the questions in dispute in this case. It would serve no useful purpose to review the evidence in connection with these various transactions. Some of them disclosed that Phillips had been a little loose in keeping his contracts, and that in some cases he had used pressure to force a settlement.

These matters all related to transactions in connection with these three oil companies, and most of them in connection with the Gordon Oil Company. Some of this evidence was admitted without objection, and much of it was relevant to the issues in this case. It appears from some of this evidence that Phillips had, at about the same time, settled his debts and obligations to others by giving them an interest in his promotional stock in the Gordon Oil Company, which was being held in escrow. Assuming that portions of this evidence should not have been admitted, no prejudice appears. (*Spolter* v. *Four-Wheel Brake Service Co.*, 99 Cal.App.2d 690 [222 P.2d 307].) Under the evidence as a whole, and especially in view of the nature of the appellant's own testimony, it would be unreasonable to think that any error in this connection could have affected the result. After reading the entire record we do not see how any court could reasonably be expected to set aside this written agreement.

The judgment is affirmed.

Griffin, J., concurred.

A petition for a rehearing was denied November 9, 1953, and appellant's petition for a hearing by the Supreme Court was denied December 10, 1953.